UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH KEAMMERER and MELISSA MASON

    Plaintiffs,

Case No. 8:22-cv-00310

v.

BRIGHTSTAR FINANCIAL GROUP, INC., d/b/a CNAC

    Defendant.

_____/

### DECLARATION OF BRIGHTSTAR FINANCIAL GROUP INC., d/b/a CNAC

James Kagiliery, in his/her capacity as **President** at Brightstar Financial Group Inc., d/b/a CNAC ("**Brightstar**"), makes the following declaration in accordance with 28 U.S.C. §1746:

1. I am over the age of 18 and have personal knowledge of the facts set forth herein based on my position as **President** at Brightstar and the business records of Brightstar.

2. I have worked at Brightstar for approximately **23** years, and during this time, I have been able to acquire an understanding of Brightstar's general

business practices, operations, and record keeping systems. I have also been able to acquire an understanding of the business practices and operations of companies that are affiliated with Brightstar.

3. I have personal knowledge that Brightstar maintains business records, including records pertaining to Joseph Keammerer and Melissa Mason (collectively "**Plaintiffs**"). I also know that said records, including the records referenced in this Declaration and/or attached as Exhibits to this Declaration, were made at or near the time of the event or occurrence, recorded by, or from information transmitted by, a person with knowledge of those matters, are kept in the ordinary course of regularly conducted business activities, and were made as a regular practice in the course of regularly conducted business activities..

4. Through my position at Brightstar, I have personal knowledge of how to access the record keeping systems of Brightstar in order to obtain documents and information pertaining to specific customers, accounts, and transactions. I understand and can accurately comprehend the information contained in such files and records, and regularly use and rely on such information as part of my job duties.

5. Based on my experience with Brightstar, I have personal knowledge of and understand the process through which Brightstar acquires Retail Installment Contracts and Security Agreements from motor vehicle dealerships and retail

installment sellers, and the documents a customer must sign as part of the transaction.

6. I have personally reviewed Brightstar's records relating to Plaintiffs and the motor vehicle sales transaction described below prior to signing this Declaration. I also reviewed the Amended Complaint filed in the above-styled litigation.

7. Based on the foregoing, I am qualified and authorized to declare and certify the facts outlined in this Declaration on behalf of Brightstar.

8. On or about October 29, 2016 Plaintiffs purchased a 2005 Ford Escape bearing vehicle identification number ▇▇▇▇▇▇▇▇4001 (hereinafter the "**Vehicle**") from Discovery Byrider, Inc. d/b/a J.D. Byrider ("**Byrider**").

9. As part of the purchase transaction for the Vehicle, Plaintiffs signed a Retail Installment Contract and Security Agreement (hereinafter the "**Contract**"). The Contract contains an Arbitration Agreement (hereinafter the "**Arbitration Agreement**"). A true and correct copy of the Contract is attached hereto as *Exhibit A*.

10. Byrider assigned all rights in the Contract to Brightstar on the same day it was executed by the Plaintiffs.

11. The Arbitration Agreement applies not only to Byrider and the Plaintiffs, but also to Brightstar, as Seller's Assignee. Specifically, the Arbitration

Agreement identifies "the Parties" as the "Buyer, Seller or Seller's Assignee." (Ex. 1, pg. 4.) The Plaintiffs are clearly a party to the Arbitration Agreement because they are named in the agreement and signed it.

12. Pursuant to the terms of the Arbitration Agreement, Plaintiffs were given the option of rejecting the Arbitration Agreement in writing within 10 days, but elected not to do so.

13. Pursuant to the terms of the Arbitration Agreement, the parties agreed to submit all claims and disputes to binding arbitration. Specifically, the Arbitration Agreement provides that all "Disputes" shall be resolved through binding arbitration, and broadly defines "Dispute" as follows:

> The term "Dispute" means any action, dispute, claim, or controversy of any kind arising out of, in connection with or in any way related to the Contract, the sale of the Vehicle, financing, contracts, origination, servicing, service agreements, collection, reporting, or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties. The term "Dispute," includes without limitation: claims under federal or state consumer protection laws; claims in tort or contract; claims under statutes or common law; claims at law or in equity; other past, present or future claims, counterclaims, cross-claims, third party claims, interpleaders or otherwise; and any claim relating to the interpretation, applicability, enforceability or formation of this arbitration agreement, including, but not limited to, any claim that all or any part of this arbitration agreement, except paragraph F, is void, voidable or unconscionable.

(Ex. 1, pg. 4.)

14. Pursuant to the terms of the Arbitration Agreement, the parties further agreed that the transaction involved interstate commerce and that the FAA would therefore apply to the Arbitration Agreement. (Ex. 1, pg. 4.)

15. The Amended Complaint (DE 13) in this action alleges that Brightstar violated the Telephone Consumer Protection Act (47 U.S.C. § 227 et. seq.) ("**TCPA**") and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55, et seq. ("**FCCPA**") by placing telephone calls in an attempt to collect the Plaintiffs' account balance.

16. All of the claims alleged in the Amended Complaint arise from or relate to the Contract, the vehicle sale evidenced by the Contract, the alleged servicing, collection, and enforcement of the Contract, as well as the relationships that resulted from the Contract. As a result, the claims alleged in the Amended Complaint fall squarely within several categories of "Disputes" that must be arbitrated pursuant to the Arbitration Agreement.

17. Further, I am familiar with Brightstar's operations and have present knowledge that the Company does not utilize any type of automated dialing system. All calls made by Brightstar are made manually via a touchtone telephone.

**I declare under penalty of perjury that the foregoing is true and correct.** Executed on this 12th day of May, 2022.

BRIGHTSTAR FINANCIAL GROUP, INC., d/b/a CNAC

By: _____

Title: _____President_____