7275133

| **RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT** No. R0619 | Seller<br>Discovery Byrider, Inc<br>d/b/a J.D. Byrider<br>8829 US Hwy 19<br>Port Richey, FL 34668 | Buyer<br>Melissa Mason<br>Joseph Keammerer<br>10805 LEEDS RD,<br>PORT RICHEY, FL, 34668 |
|---|---|---|
| Date 10/29/2016<br>Buyer's month of birth | "We" and "us" mean the Seller above, its successors and assigns. | "You" and "your" mean each Buyer above, and guarantor, jointly and individually. |

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below. The Vehicle is sold in its present condition, together with the usual accessories and attachments.

| Description of Motor Vehicle Purchased | Year 2005<br>Make FORD<br>Model ESCAPE | VIN ███████4001<br>Lic. No./Year<br>☐ New ☒ Used | Other:<br>THIS DOCUMENT AND THE OBLIGATIONS HEREUNDER ARE SUBJECT TO A SECURITY INTEREST IN FAVOR OF OAK STREET FUNDING LLC |
|---|---|---|---|
| Description of Trade-In | | | |

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. The payment secured to us by the Property and its proceeds includes, without limitation, your payment to us of the cash down payment, any deferred down payment, and any scheduled payment reflected in the Contract. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 11,349.94 , plus finance charges accruing on the unpaid balance at the rate of 21.500 % per year from today's date until paid in full. Finance charges accrue on a actual/365 day basis. You agree to pay this Contract according to the payment schedule by paying the amount stated in the Amount of Payments box in the TRUTH IN LENDING DISCLOSURES; or a greater amount. You agree that any payment made that exceeds the amount shown in the Amount of Payments box will be applied to reduce the principal amount you owe, unless you and we agree otherwise in writing. You also agree to pay the late charge shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ 0.00 if you pay this Contract in full before we have earned that much in finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☒ As part of the cash down payment for your Contract, you promise to pay us the full amount of the deferred down payments as reflected in your Payment Schedule and your Itemization of Amount Financed.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 1,400.00 |
|---|---|---|---|---|
| 21.499 % | $ 5,855.27 | $ 11,349.94 | $ 18,105.21 | $ 18,605.21 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 4 | 225.00 | Bi-Weekly equal deferred down payments due on 11/12/2016, 11/26/2016, 12/10/2016, 12/24/2016 |
| 99 | 173.79 | Bi-Weekly beginning 1/7/2017 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.
☐ **Late Charge:** If a payment is more than N/A days late, you will be charged N/A
N/A
**Prepayment:** If you pay off this Contract early, you agree to pay a minimum finance charge of $ 0.00 if you pay this Contract in full before we have earned that much in finance charges.
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**FLORIDA** RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT
MOTOR VEHICLE - NOT FOR MANUFACTURED HOMES
© 1995, 1996 Wolters Kluwer Financial Services - Bankers Systems™ Form JD-RSMVLZ-FL 9/23/2015 (Rev. 9/15)



10/29/2016 12:59:41 PM

(page 1 of 6)

  

7275133

## ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ 751.04) | $ | 12,435.04 |
| b. | Pre-delivery service fee | $ | 275.00 |
| c. | **Cash Price** (a + b) | $ | 12,710.04 |
| d. | Trade-In Allowance | $ | 0.00 |
| e. | Less: Amount owing, paid to (includes l): N/A | $ | 0.00 |
| f. | Net Trade-In (d-e); (if negative, enter $0 here and enter the amount on line l) | $ | 0.00 |
| g. | Cash payment | $ | 500.00 |
| h. | Manufacturer's rebate | $ | N/A |
| i. | Deferred down payment | $ | 900.00 |
| j. | **Down payment** (f + g + h + i) | $ | 1,400.00 |
| k. | **Unpaid balance of Cash Price** (c-j) | $ | 11,310.04 |
| l. | Financed trade-in balance (see line f) | $ | 0.00 |
| m. | Paid to public officials - filing fees | $ | 0.00 |
| n. | Insurance premiums | $ | 0.00 |
| o. | Service Contract, paid to: N/A | $ | 0.00 |
| p. | Florida Doc Stamps | $ | 39.90 |
| q. | N/A | $ | 0.00 |
| r. | N/A | $ | 0.00 |
| s. | N/A | $ | 0.00 |
| t. | N/A | $ | 0.00 |
| u. | N/A | $ | 0.00 |
| v. | N/A | $ | 0.00 |
| w. | N/A | $ | 0.00 |
| x | Total Other Charges/Amounts Paid (l thru w) | $ | 39.90 |
| y. | **Prepaid Finance Charge** | $ | 0.00 |
| z. | **Amount Financed** (k + x-y) | $ | 11,349.94 |

We may retain or receive a portion of any amounts paid to others, except those fees paid to public officials.

Florida documentary stamp tax required by law in the amount shown in the ITEMIZATION OF AMOUNT FINANCED above has been paid or will be paid directly to the Department of Revenue.

Certificate of Registration # ▇▇▇▇▇▇▇035-2 .

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

**Credit Life:** Insured N/A
☐ Single ☐ Joint Prem. $ 0.00   Term N/A
**Credit Disability:** Insured N/A
☐ Single ☐ Joint Prem. $ 0.00   Term N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offer.

 
Buyer           d/o/b       Buyer            d/o/b

**PROPERTY INSURANCE:** You must insure the Property securing this Contract against any loss. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision and comprehensive coverage deductibles may each not exceed $ 500.00 . If you get insurance from or through us you will pay $ 0.00 for N/A
N/A
_____ of coverage.

This premium is calculated as follows:
☐ $ 0.00 Deductible, Collision Coverage   $ 0.00
☐ $ 0.00 Deductible, Comprehensive Cov. $ 0.00
☐ Fire-Theft and Combined Additional Coverage $ 0.00
☐ N/A                                      $ 0.00

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS NOT INCLUDED UNLESS CHECKED AND INDICATED.**

☐ **OPTIONAL SERVICE CONTRACT:** With your purchase of the Vehicle, you have elected to purchase a Service Contract to cover N/A
N/A                                                        .
This Service Contract is not required to obtain credit.
This Service Contract will be in effect for N/A
N/A                                                        .

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We may offer to defer the scheduled due date of all or any part of any installment payment, and will collect a $15.00 fee for such deferment. You may need to extend any insurance coverage or reimburse us for any costs incurred in extending such coverage. In addition to the $15.00 deferment fee and the costs of extending required or optional insurance, you will also be required to pay additional finance charges as a result of exercising the deferment option.

If you reject or revoke acceptance of the motor vehicle and assert a security interest in the motor vehicle, you must either (1) post a bond in the amount of the disputed balance, or (2) deposit all accrued and thereafter accruing installment payments into the appropriate court.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You hereby authorize us to correct any clerical errors or omissions made in completing this form and other documents related to this transaction.

**NAME AND LOCATION:** You agree that your name and address indicated on page 1 are your exact legal name and your principal residence. You agree that your telephone number and place of employment shown on your credit application are accurate and current. You agree to promptly let us know if you change your name, address, telephone number or place of employment.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full. We may impose an acquisition charge of $75.00 for services performed in processing this Contract if it is paid in full within 6 months after the Contract's effective date.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

(page 2 of 6)

**RETURNED CHECK CHARGE:** If you make any payment required by this Contract with a check, negotiable instrument, electronic payment or other payment device that is returned or dishonored, you agree to pay the maximum returned check fee permitted by applicable law. If not paid when due, we may add this fee to the unpaid balance of this Contract.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.
B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract. You agree to provide us with written notice at least 30 days prior to relocating to a different state than the one shown on page 1 of this Contract.
E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.
F. You will pay all taxes and assessments on the Property as they become due.
G. You will notify us within 24 hours of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A. You fail to make any payment under this Contract when due, including any cash down payment, deferred down payment, and scheduled payment you owe us under the Contract.
B. You fail to do anything else you have agreed to do in this Contract.
C. Any statement or representation you made in your credit application is untrue or incorrect.
D. You fail to provide us: (i) with proof of employment, income, residence, insurance or repair to credit history; (ii) 12 personal references; or (iii) other information relating to the credit transaction within 3 business days after our written request for this information.
E. You die, become incompetent, generally fail to pay your debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.
F. Any judgment, levy, attachment, writ of garnishment or other similar order is entered against you or the Property.
G. Any police or governmental agency seizes or impounds the Vehicle or starts forfeiture proceedings against the Property.
H. Any other event or circumstance occurs that causes us to deem ourselves insecure, or to believe that our prospects for payment or realization upon the Property is impaired.

If you default, you agree to pay our costs for collecting amounts owing, including court costs, reasonable attorneys' fees (if we refer this Contract to an attorney that is not a salaried employee of ours for collection) and fees for repossession, repair, storage and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:
A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges. These amounts will earn finance charges from the date you are required to pay us at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. This amount will be due immediately. This amount will earn finance charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may immediately immobilize, disable or take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our actual and reasonable expenses and then toward your obligations.
E. Except when prohibited by law, you are responsible for any deficiency if the proceeds from the sale of the Property do not cover what you owe us. We may sue you for those additional amounts.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. Notice pursuant to Fla. Stat. ch. 493.6404 shall be sent to debtor by licensed repossession service. You will have 45 days from the date the notice of intent to dispose of said personal property is sent to claim said property. You will have to pay any reasonably incurred expenses for inventory and storage.

---

**THIRD PARTY AGREEMENT**
By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

N/A
_____
Signature                              Date

---

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as lender's loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance from any insurance provider that is reasonably acceptable to us. Your choice of an insurance provider will not affect the credit decision. We may impose reasonable requirements concerning the extent of coverage and the financial soundness of the insurance provider. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one

7275133

 

7275133

you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
  A. You must pay this Contract even if someone else has also signed it.
  B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
  C. We may release any security and you will still be obligated to pay this Contract.
  D. If we give up any of our rights, it will not affect your duty to pay this Contract.
  E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**JURY TRIAL WAIVER: Notwithstanding the enforceability or applicability of any other provision of this Contract, you and we agree that you and we will give up and waive your and our respective rights to a trial by a jury, if any.**

**LIQUIDATED DAMAGES:** If we allow you to return the Property and cancel your obligations under the Contract, you agree that we will incur damages in an amount that is difficult for you and us to predict as of the Contract date. Unless prohibited by applicable law, you agree that we, if we allow you to return the Property and cancel your Contract obligations, may retain as damages any property and money that you used as a down payment.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

> Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
>
> Spanish Translation:
> Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## ARBITRATION AGREEMENT

**A. Mandatory Arbitration:** Unless otherwise stated in this agreement, any "Dispute" between the Parties shall, at the election of Buyer, Seller or Seller's Assignee ("the Parties"), be resolved by a neutral, binding arbitration, and not by a court of law. This procedure includes any Dispute over the interpretation, scope, or validity of this Contract, the arbitration agreement or the arbitrability of any issue, with the sole exception of the Parties' waiver of any right to bring a class action or to participate in a class action as provided for under paragraph F shall be solely determined by the appropriate court, if necessary. The arbitration agreement applies to the Parties, including their respective employees or agents, as to all matters which arise out of or relate to this Contract or are in any way connected with the purchase and sale or financing of the Vehicle, or any resulting transaction or relationship.

**B. Dispute:** The term "Dispute" means any action, dispute, claim, or controversy of any kind arising out of, in connection with or in any way related to the Contract, the sale of the Vehicle, financing, contracts, origination, servicing, service agreements, collection, reporting, or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties. The term "Dispute," includes without limitation: claims under federal or state consumer protection laws; claims in tort or contract; claims under statutes or common law; claims at law or in equity; other past, present or future claims, counterclaims, cross-claims, third party claims, interpleaders or otherwise; and any claim relating to the interpretation, applicability, enforceability or formation of this arbitration agreement, including, but not limited to, any claim that all or any part of this arbitration agreement, except paragraph F, is void, voidable or unconscionable.

**C. Facts about Arbitration:** Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present some evidence to the arbitrator. A Party's ability to discover things may be limited. Arbitration proceedings are private and less formal than court trials. Other rights that the Parties might have in court might not be available in arbitration. An arbitrator issues an award. A court may then enforce the award like a court judgment. Courts rarely overturn an arbitrator's award.

**D. Rules and Procedures:** Written notice shall be given for any Dispute. Such notice shall be given by both first class mail and certified mail, return receipt requested. Notice to the Buyer shall be sent to the Buyer's address in the Contract. Notice to the Seller or the Seller's Assignee shall be sent to the address in paragraph M of this arbitration agreement. The Party initiating the arbitration shall set forth in the notice the nature and factual basis of the Dispute, the names and addresses of all other Parties, the amount involved, and the specific relief requested. The Party responding to such a notice may answer and similarly set forth any counter-Disputes. The arbitration will be conducted by one neutral and impartial arbitrator mutually agreed upon by the Parties. The arbitrator shall be an attorney or retired judge. In the event the Parties cannot agree on an arbitrator, the Parties agree that an arbitrator may be appointed by a court in accordance with the Federal Arbitration Act (9 U.S.C. §1, et seq.). The arbitrator may conduct all necessary preliminary proceedings, provide for the exchange of information and/or discovery, and set the time, date and place of any hearing, after reasonable notice to and consultation with the Parties. The award shall be issued without a written opinion no later than 30 days from the date any hearing is completed.

**E. Standards and Law:** The Parties agree that the Contract and purchase of the Vehicle involve interstate commerce and that this arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 through 16 as amended ("FAA"). The arbitrator shall strictly apply applicable substantive law and applicable statutes of limitation consistent with the FAA and shall honor claims of privilege recognized at law.

**F. Class Action Waiver:** The Parties agree to give up any right they may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with the arbitration of others. The Parties give up the right to serve as a private attorney general in any jurisdiction in which such procedure might be permitted. To the extent the Parties are permitted to file small claims under paragraph J, the Parties agree that any small claim may only be brought on an individual basis and that no small claim may be brought on a class or representative basis.

**G. Punitive Damage Waiver:** The Parties waive any right to seek or recover punitive damages in any Dispute. No arbitrator shall have the power or authority to award punitive damages.

© 1995, 1996 Wolters Kluwer Financial Services - Bankers Systems™ Form JD-RSMVLZ-FL 9/23/2015 (Rev. 9/15)

10/29/2016 12:59:41 PM

(page 4 of 6)

**H. Fees and Costs:** If Buyer initiates the arbitration of a Dispute, Buyer will pay the first $250 of the arbitrator's fees and expenses; Seller or Seller's Assignee will pay any additional fees or expenses of the arbitrator. Seller or Seller's Assignee will pay all of the arbitrator's fees and expenses if Seller or Seller's Assignee initiate the arbitration of a Dispute. The Parties shall be responsible for their own attorneys' fees associated with any arbitration, unless otherwise allowed for under applicable substantive law and awarded by the arbitrator.

**I. Self-Help:** Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the Dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

**J. Exceptions:** The Parties agree that this arbitration agreement is not applicable to "small claims" meaning those claims that either Party is entitled to file and maintain in an appropriate small claims court or any action where the total amount in controversy is no greater than $12,000, including any claims for attorney's fees and non-monetary relief.

**K. Severability:** If it is determined that any paragraph or provision in this arbitration agreement is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this arbitration agreement. The remainder of this arbitration agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision, if a court of competent jurisdiction determines paragraph F to be void, illegal, invalid, or unenforceable, the Parties agree that paragraph F shall not be severed and that this arbitration agreement shall be void in its entirety.

**L. Survival of Arbitration Agreement:** This arbitration agreement will survive and continue in full force and effect notwithstanding cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Contract or any other contract or transaction between the Parties, unless otherwise agreed in writing. In addition, Buyer understands and acknowledges that the rights and responsibilities afforded to Seller under this arbitration agreement survive any assignment of the Contract by Seller and that Seller can enforce this arbitration agreement in the event a Dispute arises after the assignment of the Contract.

**M. Right to Reject Arbitration:** If you do not want this arbitration agreement to apply, you may reject it by mailing a written notice to us c/o Byrider Franchising, LLC, 12802 Hamilton Crossing Blvd., Carmel, Indiana 46032 Attn: VP Franchise Operations that describes the Contract and states that you are rejecting the arbitration agreement. A rejection notice is only effective if it is signed by each Buyer, and the envelope that the rejection notice is sent in is postmarked no more than 10 calendar days after the date of the Contract. If you reject this arbitration agreement, it will not affect any other provisions of the Contract or your obligations under the Contract. If you do not properly reject this arbitration agreement, it will be effective as of the date of the Contract.

**FOR ALL DISPUTES COVERED BY THIS ARBITRATION AGREEMENT, THE PARTIES HAVE AGREED TO WAIVE THEIR RIGHT TO A TRIAL BY JURY, THEIR RIGHT TO PARTICIPATE IN CLASS ACTIONS, AND THEIR RIGHT TO SEEK PUNITIVE DAMAGES. EXCEPT FOR DISPUTES AND CLAIMS NOT SUBJECT TO THIS ARBITRATION AGREEMENT, ARBITRATION SHALL BE IN PLACE OF ANY CIVIL LITIGATION IN ANY COURT AND IN PLACE OF ANY TRIAL BY JURY.**

**THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT UNDERSTAND ANY TERMS OF THIS ARBITRATION AGREEMENT OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE BEFORE SIGNING THIS CONTRACT. BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS AND STIPULATIONS SET FORTH ABOVE.**

7275133

**ASSIGNMENT BY SELLER:** Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 5, the terms of this assignment are described in a separate writing(s) and not as provided below.)
  Seller warrants:
A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.
  If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.
  Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.
  Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.
  Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

**UNLESS OTHERWISE INDICATED ON PAGE 5, THIS ASSIGNMENT IS WITHOUT RECOURSE.**

**WITH RECOURSE:** If this Assignment is made "with recourse" as indicated on page 5, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

**ASSIGNMENT:** This Contract and Security Agreement is assigned to _____
Brightstar Financial Group, Inc. d/b/a CNAC _____,
the Assignee, phone (904)425-3000 _____. This assignment is made ☒ under the terms of a separate agreement.
☐ under the terms of the ASSIGNMENT BY SELLER on page 5.
☐ This assignment is made with recourse.
Seller: By _____
Date _____ 10/29/16

   (page 5 of 6)

© 1995, 1996 Wolters Kluwer Financial Services - Bankers Systems™ Form JD-RSMVLZ-FL 9/23/2015 (Rev. 9/15)

10/29/2016 12:59:41 PM

7275133

## NOTICE TO BUYER

A. Do not sign this agreement before you read it or if it contains any blank spaces. B. You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights. C. This agreement contains an arbitration of disputes provision which governs certain disputes between the parties.

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1, 2, 3, 4, 5 AND 6 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

Buyer:

_MMason_  10/29/16
Signature                               Date

_[signature]_  10/29/16
Signature                               Date

Seller: By _[signature]_